# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. LEIKHEIM, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 17-1011 |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| Defendant | : | |

## M E M O R A N D U M

**STENGEL, C.J.**                                                         February 1, 2018

John W. Leikheim seeks judicial review of the final decision of the Commissioner of the Social Security Administration which denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. No. 7.) The Commissioner opposed plaintiff's request for review. (Doc. No. 8.) Upon referral to United States Magistrate Judge Linda K. Caracappa, a report & recommendation (the "Report") was filed which recommended that I deny review. (Doc. No. 11.) The plaintiff filed Objections (Doc. No. 12) and the Commissioner filed a response to plaintiff's objections. (Doc. No. 13). For the following reasons, I will sustain the plaintiff's Objections, reject the Report, and remand the matter to the Administrative Law Judge for further proceedings.

**I.    Procedural History**

Plaintiff filed an application for DIB and SSI on October 20, 2013. (R. 19.) On

December 19, 2013, plaintiff's application was denied. (Id.) ALJ Anne W. Chain held a hearing on June 16, 2015 pursuant to plaintiff's timely request. (Id.) On August 28, 2015, ALJ Chain issued a decision denying plaintiff's application for DIB and SSI. (R. 19-30.) On January 4, 2017, the Appeals Council denied plaintiff's request for review. (R. 1-5.)

This request for review pursuant to 42 U.S.C. § 405(g) followed.

**II.     Standard**

A district court reviews de novo the parts of the Magistrate Judge's Report to which either party objects. See 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Id.

Under the well-established substantial evidence standard, my review is limited to determining whether the ALJ's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). If substantial evidence supports the ALJ's decision, I must affirm it. Substantial evidence is not a large or considerable amount of evidence, but is such evidence as a reasonable mind might accept to support a conclusion. Pierce v. Underwood, 487 U.S. 552, 555 (1988). Substantial evidence is often defined as more than a mere scintilla but somewhat less than a preponderance. Richardson v. Perales, 402 U.S. 389, 390, 401 (1971).

It is essential to remember that even if I were to have decided the case differently, I must still defer to the Commissioner and affirm her findings if substantial evidence supports them. Perales, 402 U.S. at 401. I may not undertake a de novo review of or reweigh the evidence of record. Id.

## III. Discussion

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; see also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009).

An ALJ must conduct a five step sequential analysis when reviewing a claim. For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit the claimant's ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a residual functional capacity ("RFC") to perform work with the claimant's limitations and can return to the claimant's previous work with that RFC; and (5) can perform any other work existing in the national economy. See 20 C.F.R. § 416.920(a)(4)(i)-(v); see also Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004).

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence.[1] (Doc. No. 7.) Specifically, plaintiff argues that the ALJ committed two errors: (a) the

---

[1] The ALJ found at step one that plaintiff was not engaged in substantial gainful activity. At step two the ALJ found that plaintiff had the following severe impairments: Affective Disorder; Schizoaffective Disorder; Attention Deficit Hyperactivity Disorder (ADHD); and Substance Addiction Disorder. The ALJ determined at step three that plaintiff did not meet the listing requirement. The ALJ conducted an RFC assessment, noting that these medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 25.) The ALJ concluded that plaintiff was capable of the full range of work at all exertional levels with the

ALJ failed to properly evaluate and weigh the opinion of plaintiff's treating psychiatrist, Dr. Marraccini and (b) the ALJ's credibility assessment of opinion evidence is not supported by substantial evidence.

For the reasons discussed below, I find that the ALJ's decision to give no weight to Dr. Marraccini's medical opinion is not supported by substantial evidence. I also find that the ALJ's credibility assessment is not supported by substantial evidence. I will sustain the plaintiff's Objections and remand the matter for further consideration.

**A. The ALJ's decision to give no weight to the opinion of plaintiff's treating psychiatrist is not supported by substantial evidence.**

A treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[2] See 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). A treating source's opinion may be rejected "on the basis of contradictory medical evidence." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); see Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians was a sufficient basis for refusing to give a treating physician's

---

following nonexertional limitations: no more than occasional exposure to hazards including unprotected heights and moving machinery; routine tasks; short simple instructions; simple work related decisions with few workplace changes; no interaction with the public; and no more than occasional interaction with coworkers and supervisors. (R. 24.) At step four the ALJ found that Plaintiff was unable to perform past relevant work, but the ALJ determined at step five that plaintiff was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 30.) Therefore, plaintiff was not disabled as defined by the Social Security Act.

[2] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient." 20 C.F.R. § 404.1502. A medical course may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." Id.

conclusory opinion controlling weight); Brown v. Astrue, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to treating physician). So too may an opinion be rejected if there is insufficient clinical data, see Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living. See Smith v. Astrue, 359 F. App'x 313, 316-17 (3d Cir. 2009) (not precedential). The opinion may be afforded "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286).

Opinions from non-treating sources who have examined a claimant also garner weight.[3] 20 C.F.R. § 416.927(c)(1); see Chandler v. Comm'r of Social Sec., 667 F.3d 356, 361 (3d Cir. 2011). While they do not receive as much consideration as a treating source's opinions, they warrant more weight than the opinion of non-examining medical sources. 20 C.F.R. § 416. 927(d)(1); see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 257 (3d Cir. 2008). Testimony from a non-examining source also must be considered by the ALJ, but is not entitled to deference.[4] 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180 at *2. It is error to "credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the

---

[3] Non-treating sources are usually doctors who have examined the claimant, but not in the context of an ongoing treatment relationship. 20 C.F.R. § 416.902. A source is non-treating if a claimant visits a doctor solely to obtain a report in support of his or her claim. Id.
[4] A non-examining source is an acceptable medical source who has not examined the claimant, but who provides a medical opinion of the case. 20 C.F.R. § 416.902.

claimant's treating physician." Franklin v. Barnhart, No. 05-2215, 2006 WL 1686692, at *11 (E.D. Pa. June 13, 2006) (quoting Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986)).

Pursuant to 20 C.F.R. 416.927(c)(2), when deciding that a treating source's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion by considering certain factors such as: the length of the treatment relationship, the frequency of visits, the nature and extent of the treatment relationship, whether the source has supported his or her opinion with medical evidence, whether the opinion is consistent with the medical record and the medical source's specialization. 20 C.F.R. 416.927(c)(2); see also SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *4. "While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Cadillac v. Barnhart, 84 Fed. App'x. 163, 168 (3d Cir. 2003) (not precedential) (quoting Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983) (alteration in original, internal quotations omitted)). In choosing to reject a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317.

It is imperative that an ALJ provide sufficient detail in his opinion to facilitate judicial review. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). As the Court of Appeals observed in Plummer, 186 F.3d at 429: When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence

for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983). It is error for an ALJ to fail "to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination. . . ." Burnett, 220 F.3d at 121.

*Dr. Marraccini*

Plaintiff first sought treatment with Dr. Marraccini on May 10, 2011 with complaints of depressive symptoms, depressed mood, diminished interest or pleasure, insomnia, and diminished ability to think/concentrate. Plaintiff sought treatment with Dr. Marraccini two more times in 2011, once in March of 2012, and then on a consistent basis beginning in August of 2012 through at least May 28, 2015. (Report at 21 (citing R. 384, 388, 378, 393, 418).) Throughout his extensive treatment with Dr. Marraccini, plaintiff presented with depressive symptoms and paranoia. (See e.g., R. 393, 384, 381, 378, 375, 372, 351, 354, 468, 478, 503, 538, 542.)

On June 4, 2015, Dr. Marraccini prepared a mental impairment questionnaire. Plaintiff's medical history included multiple hospitalizations as a child for suicide attempts and, more recently, at least two hospitalizations[5] in October 2012 and April

---

[5] Plaintiff submits that he was hospitalized four times as an adult, including in April 2011 and March 2012, but these medical records are not contained in the administrative record (Doc. No. 7 at 6.) However, these hospitalizations are noted by Dr. Marraccini. (R. 550.)

7

2013.[6] (Id.) Dr. Marraccini's diagnosis was Schizoaffective disorder and ADHD. (R. 550, 554.) Plaintiff was being treated with Zoloft, Risperidal, Seroquel, and Vyvanese. (R. 550.)

Dr. Marraccini noted the following signs and symptoms to support this diagnosis: depressed mood, persistent or generalized anxiety, feelings of guilt or worthlessness, paranoid ideation, difficulty thinking or concentrating, easy distractibility, paranoia/suspiciousness, vigilance and scanning, anhedonia/pervasive loss of interests, decreased energy, deeply ingrained maladaptive patterns of behavior, psychomotor agitation and retardation, marked social withdrawal or isolation, delusions, and poor sleep. (R. 551.) Dr. Marraccini explained that plaintiff experiences marked insomnia, social isolation, and feelings of worthlessness. (R. 552.) Plaintiff "functions very poorly outside of his bedroom and even has difficulty interacting with the family." (Id.) Other findings that support this diagnosis and assessment included repeated mental status examinations that revealed poor concentration, depressed mood, and paranoid ideation; that plaintiff appears disheveled and sleep deprived; and that plaintiff becomes "anxious and paranoid in the waiting room . . . and required the company of his family." (Id.)

Dr. Marraccini opined that plaintiff has marked limitations in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain

---

[6] Plaintiff was admitted to Lehigh Valley Muhlenberg Hospital from October 8, 2012 through October 12, 2012 with complaints of depression and suicidal feelings. (R. 602-603.) He had racing thoughts, palpitations, crying spells, shakiness, and was feeling depressed, worthless, isolative, and hopeless. (Id.) Plaintiff was hospitalized again on April 3, 2013 through April 10, 2013 also at Lehigh Valley Muhlenberg Hospital. (R. 279-283.) He presented with depression, agitation, and suicidal thoughts. (Id.)

8

attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, sustain ordinary routine without supervision, work in coordination with or near others without being distracted by them, complete a work day without interruptions from psychological symptoms, perform at a constant pace without rest periods of unreasonable length or frequency, interact appropriately with the public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them, maintain socially appropriate behavior, respond appropriately to workplace changes, and travel to unfamiliar places or use public transportation.[7]

Dr. Marraccini concluded that plaintiff "would be unable to tolerate a workplace setting due to paranoia . . . of the many patients that I see, I feel that John's illness is among the most severe and disabling." (R. 554.)

Despite plaintiff's protracted treatment with Dr. Marraccini the ALJ gave this opinion no weight, relying instead on the state agency examining reviewer. The ALJ rejected Dr. Marraccini's opinion because it was not consistent with the Global Assessment Functioning ("GAF")[8] scores assigned by Dr. Marraccini. The ALJ also

---

[7] Dr. Marraccini also noted moderate-to-marked limitations in the ability to remember locations and work-like procedures, understand and remember one-to-two step instructions, carry out simple, one-to-two step instructions, make simple work-related decisions, adhere to basic standards of neatness, set realistic goals, and make plans independently. (R. 553.)

[8] As discussed more fully below, GAF scores were used "by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n. 1 (3d Cir. 2007). A GAF score ranging from 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning." (Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.) A GAF score ranging from 41-50 "indicates a serious impairment in social, occupational, or school functioning. (Id.)

9

reasoned that Dr. Marraccini's opinion was not consistent with the medical records that demonstrated improvements when plaintiff was compliant with his treatment plan. (R. 28.)

Judge Caracappa found that the ALJ's decision to afford no weight to plaintiff's treating psychiatrist was supported by substantial evidence. The Magistrate Judge reasoned that although Dr. Marraccini opined that plaintiff was unable to function in an employment setting, plaintiff's GAF scores "consistently fell around 55," which indicated only moderate symptoms. (R. 28.) The Magistrate Judge concluded that "[t]he GAF scores indicating moderate symptoms do appear to conflict with Dr. Marraccini's characterization that plaintiff was altogether unable to function outside of his house." (Report at 22.) Judge Caracappa also found that Dr. Marraccini's opinions were not supported by the medical evidence that demonstrated improvements when plaintiff was compliant with treatment.

At the outset, the GAF scale was abandoned in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. Subsequently, the Social Security Administration issued an administrative message as guidance for the consideration of GAF scores in disability claims. The administrative message stated that the agency will "continue to receive and consider GAF scores as opinion evidence," but:

> As with other opinion evidence, a GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a

reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

Kroh v. Colvin, 2014 WL 4384657, at *18 (W.D.Pa. Sep. 4, 2014) (citing Lane v. Colvin, No. 13-5658, 2014 WL 1912065, at *9 (W.D.Wash. May 12, 2014) (quoting AM-13066).

Here, the ALJ relied almost exclusively on plaintiff's GAF scores to reject Dr. Marraccini's detailed opinion as inconsistent with the medical record. (R. 28.) The ALJ stated that from 2011 through 2015, Dr. Marraccini "consistently gave the [plaintiff] GAF scores of 55 or in that range." (Id.) This is the full extent of the ALJ's reasoning to this point. The ALJ seems to imply that because a GAF score of 55 indicates only moderate impairments, Dr. Marraccini's conclusion that plaintiff has severe impairments and is unable to work is inconsistent with his own treating notes. Even with this favorable reading of the opinion, I remain unable to find that the ALJ's conclusion is supported by substantial evidence. The ALJ's reasoning mischaracterizes the medical record. Dr. Marraccini only assessed plaintiff's GAF score as 55 on two occasions. The treatment notes from the remaining 31 visits do not include a GAF score. Two isolated GAF scores with no supporting evidence are insufficient to undermine Dr. Marraccini's extensive treatment and medical opinion.

The only other reason cited by the ALJ for her decision to afford Dr. Marraccini's opinion no weight was the fact that when plaintiff was compliant with his treatment plan he showed improvements. The ALJ reasoned that this was inconsistent with Dr. Marraccini's opinion that plaintiff had marked limitations in several mental areas and was unable to work. However, the ALJ failed to consider the reasons for plaintiff's non-

11

compliance and failed to acknowledge the role of plaintiff's mental illness on his ability to comply with treatment. See, e.g., SSR 96-7p (an adjudicator shall not draw inferences about and individual's symptoms from noncompliance with treatment without considering any explanations); Pate-Fires v. Astrue, 564 F.3d 935, 945-46 (8th Cir. 2009) ("[c]ourts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medications); Pounds v. Astrue, 772 F.Supp. 2d 713, 723 n. 21 (W.D.Pa. 2011) ("non-compliance is a hallmark of bipolar disorder, particularly when the person is in the manic phase); see also Gleason v. Colvin, 152 F. Supp. 3d 364 (E.D.Pa. 2015).

The ALJ's failure to consider the effect of plaintiff's mental illness on his compliance with treatment is particularly troubling in light of Dr. Marraccini's statement that plaintiff,

> Has attempted psychotherapy on many occasions. However, due to his illness, he has had extreme difficulty trusting, and therefore, engaging in a meaningful relationship with a therapist. [Plaintiff] has been able to form a trusting relationship with me and I do provide supportive therapy to him during out sessions.

(R. 641.) This finding is corroborated by plaintiff's testimony concerning therapy where he stated, " I've seen literally 30 therapists/counselors. I have a very hard time opening up to somebody and talking to them . . . I do want to see a counselor, but it has to be the right one." (R. 51.) The ALJ's decision to afford no weight to Dr. Marraccini's opinion based on plaintiff's non-compliance, absent any consideration for the effect of plaintiff's

mental illness on his ability to comply with treatment, is not supported by substantial evidence.[9]

The ALJ also failed to analyze the factors necessary to evaluate the opinion of a treating physician—specifically, the frequency of visits, the nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical records, and the medical source's specialization. See 20 C.F.R. § 416.927(c). Based upon the length of their relationship (over 4 years), the frequency with which plaintiff sought treatment with Dr. Marraccini, a treating psychiatrist (at least 29 visits between August 30, 2012 and May 28, 2015), and the fact that Dr. Marraccini's opinion is supported by the medical record (which includes at least two inpatient hospitalizations relating to plaintiff's depression and suicidal thoughts), the § 416.927(c) factors weigh in favor of giving his opinion greater weight. "The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)). Here, I have

---

[9] What is more, substantial evidence does not support the ALJ's conclusion that when plaintiff is compliant with treatment he "appears to be able to manage his impairment fairly well." (R. 26.) As noted by plaintiff, although the treatment records reflect sporadic improvements, plaintiff's overall presentation was not compatible with an ability to perform substantial gainful employment. See, e.g., R. 348-51 (plaintiff stated that he tolerated the Zyprexa well and slept slightly better. However, the records also reflect that he reported continued racing thoughts and is "very uncomfortable around others." In addition, Dr. Marraccini noted that his mood was depressed and irritable and his affect was intense.).

13

no way of knowing if the ALJ considered the § 416.927(c) factors, or whether any of those factors impacted her decision to give no weight to Dr. Marraccini's opinion.

Rather than rely on Dr. Marraccini, with whom plaintiff treated on a consistent basis for four years, the ALJ gave great weight to the opinion of state agency reviewer, Joseph A. Barrett, Ph.D. Dr. Barrett did not see plaintiff, but rather prepared a report based solely on his review of the records. Dr. Barrett concluded that plaintiff had mild restriction of activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (R. 98.) Dr. Barrett opined that "with abstinence from alcohol/marijuana and continued compliance with the claimant's prescribed treatment plan, the claimant should be able to complete simple routine tasks in the workplace." (Id.) Dr. Barrett did not provide any objective medical support for these findings. The ALJ gave this opinion great weight because "his residual functional capacity assessment accurately reflected the claimant's severe impairment and his medical opinions were consistent and supported by the medical record." (R. 27.) The ALJ did not cite to any contradictory medical evidence, other than these conclusory statements, that would warrant rejecting Dr. Marraccini's opinion.

I find that the ALJ's decision to afford no weight to Dr. Marraccini's opinion is not supported by substantial evidence, and I will sustain the plaintiff's Objection. On remand, the ALJ shall consider the § 416.927(c) factors as well as the role of the plaintiff's mental illness on his ability to comply with treatment.

**B. The ALJ's credibility assessment is not supported by substantial evidence.**

When making credibility findings, the ALJ must indicate which evidence she rejects and which she relies upon as the basis for her findings. See <u>Schaudeck v. Commissioner of Social Sec. Admin.</u>, 181 F.3d 429, 433 (3d Cir. 1999). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is less than fully credible. See <u>Burns v. Barnhart</u>, 312 F.3d 113, 129–30 (3d Cir.2002). Moreover, allegations of pain and other subjective symptoms must be supported by objective medical evidence. <u>See</u> 20 C.F.R. § 404.1529; <u>see</u> <u>also</u> <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir.1999). Even "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence." See <u>Rutherford</u>, 399 F.3d at 554; <u>Salles v. Comm'r of Soc. Sec.</u>, 229 F. App'x 140, 146 (3d Cir. 2007) (not precedential). The Court of Appeals has acknowledged that an ALJ's credibility assessment "is entitled to our substantial deference." <u>Szallar v. Comm'r of Soc. Sec.</u>, 631 Fed. App. 107, 110 (3d Cir. 2015) (citing to <u>Zirnsak v. Colvin</u>, 777.F.3d 607, 613 (3d Cir. 2014)).

Here, the ALJ found that "[t]he medical evidence does not support the claimant's allegations regarding the intensity, persistence and limiting effects of the claimant's severe impairments." (R. 26.) The ALJ noted that plaintiff was limited by his severe impairments, but concluded that "[t]he extent the claimant would be restricted appears to be directly related to the claimant's history of failing to comply with the prescribed treatment plan and medications of his treating physicians." (<u>Id.</u>)

Judge Caracappa determined that the ALJ's credibility assessment was supported by substantial evidence. (Report at 23-26.) The Magistrate Judge reasoned that when plaintiff was compliant with treatment, the records demonstrated improvements. (Report at 25-26.)

The ALJ does not cite to any inconsistencies in plaintiff's testimony, his activities of daily living, or contradictory medical evidence. Rather, the ALJ's credibility determination is based solely on plaintiff's non-compliance with treatment without consideration for plaintiff's mental illness. For the same reasons discussed above, this credibility finding does not hold water. I find that substantial evidence does not support the ALJ's credibility assessment of plaintiff's subjective complaints.

The ALJ also gave little weight to the testimony of plaintiff's mother, Denise Leikheim. The ALJ provided the following explanation for her credibility finding:

> Mrs. Leikheim provided an opinion of the claimant's abilities and the limiting effects of his impairments. However, Mrs. Leikheim is not a licensed physician nor has she been trained in the healthcare field. Furthermore, Mrs. Leikheim did not have access nor has she reviewed claimant's medical file. Additionally, Mrs. Leikheim has an incentive to overstate the limiting effects of the claimant's impairments during the claimant's application for disability.

(R. 28.) The Magistrate Judge concluded that the ALJ properly considered Mrs. Leikheim's testimony, restating the above language. (Report at 27.)

The ALJ's credibility finding is not supported by substantial evidence. Mrs. Leikheim offered testimony as plaintiff's mother with whom he resides and who actively participates in his medical care. This testimony corroborated plaintiff's description of the limiting effects of his disability. Mrs. Leikheim did not offer a medical opinion. A

16

finding that this testimony was not credible because Mrs. Leikheim is not a medical expert is simply a non-sequitur. The ALJ also failed to cite to any evidence demonstrating Mrs. Leikheim's "incentive to overstate" plaintiff's impairment, such as her demeanor or inconsistencies in her testimony. Although I am bound to give substantial deference to the ALJ's credibility determination, see Szallar, 631 Fed. Appx. at 110, viewing the evidence of record I find that substantial evidence does not support the ALJ's credibility assessment.

Therefore, I will sustain the plaintiff's Objection and remand the matter for further proceedings.

An appropriate Order follows.